UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES | | |
| v. | | No. 3:16-cr-238 (SRU) |
| LUCILO CABRERA | | |

## ORDER

On March 9, 2018, a jury found Lucilo Cabrera guilty of kidnapping, Hobbs Act extortion, and conspiracy to commit those two crimes.[1]  *See* Verdict, Doc. No. 225.  On December 9, 2019, I held a sentencing hearing and sentenced Cabrera to 135 months' imprisonment.  *See* Min. Entry, Doc. No. 376; Judgment, Doc. No. 380 (entered on Jan. 21, 2020).  On December 13, 2019, Cabrera filed a notice of appeal.  *See* Notice of Appeal, Doc. No. 378.  Cabrera's appeal remains pending.

On May 1, 2020, Cabrera, who is currently being housed at the Donald W. Wyatt Detention Facility in Central Falls, Rhode Island ("Wyatt"), filed a *pro se* motion for temporary release from detention "until the current health crisis subsides."  *See* Mot. for Release, Doc. No. 394, at 1.  Specifically, Cabrera requested that—due to the COVID-19 pandemic and its especially acute effect in jails—I release him to home incarceration.  *See id.*  On May 5, 2020, the government submitted an opposition to Cabrera's request.  *See* Gov't Opp'n, Doc. No. 395.  On May 8, Terence S. Ward of the Federal Public Defender's Office entered an appearance on Cabrera's behalf.  *See* Notice of Appearance, Doc. No. 396.  On May 11, Cabrera filed a reply

---

[1]  More specifically, Cabrera was convicted of two counts of kidnapping, in violation of 18 U.S.C. §§ 1201(a)(1) and 2; three counts of Hobbs Act extortion, in violation of 18 U.S.C. §§ 1951(a) and 2; one count of conspiracy to commit kidnapping, in violation of 18 U.S.C. § 1201(c); and one count of conspiracy to commit Hobbs Act extortion, in violation of 18 U.S.C. § 1951(a).  *See* Verdict, Doc. No. 225; Superseding Indictment, Doc. No. 141.

(through counsel).  *See* Reply, Doc. No. 397.  On May 27, I issued a written order denying

Cabrera's motion for temporary release.  *See* Order, Doc. No. 399.

On May 28, Cabrera (through counsel) filed a motion for reconsideration.  *See* Mot. for

Reconsid., Doc. No. 400.  On June 5, the government submitted an opposition.  *See* Gov't

Opp'n, Doc. No. 407.  On June 12, I held a Zoom hearing—at which Cabrera was present—and

took the motion for reconsideration under advisement.  *See* Min. Entry, Doc. No. 408.  For the

following reasons, I **deny** Cabrera's motion for reconsideration and adhere to my prior ruling.

## I.      Standard of Review

Motions for reconsideration may be filed in criminal cases.  *See United States v. Clark*,

984 F.2d 31, 33–34 (2d Cir. 1993) (recognizing that a post-judgment motion for reconsideration

can be filed in a criminal case so long as it is timely filed); D. Conn. L. Cr. R. 1(c) (explaining

that D. Conn. L. Civ. R. 7(c) shall apply in criminal proceedings); *United States v. Reyes*, 2013

WL 789735, at *1 (D. Conn. Mar. 4, 2013).  "The major grounds justifying reconsideration are

an intervening change of controlling law, the availability of new evidence, or the need to correct

a clear error or prevent manifest injustice."  *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956

F.2d 1245, 1255 (2d Cir. 1992) (cleaned up).  The standard for granting a motion for

reconsideration "is strict, and reconsideration will generally be denied unless the moving party

can point to controlling decisions or data that the court overlooked."  *Analytical Surveys, Inc. v.

Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (cleaned up) (quoting *Shrader v. CSX

Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).  A motion for reconsideration "is not a vehicle

for relitigating old issues, presenting the case under new theories, securing a rehearing on the

merits, or otherwise taking a second bite at the apple."  *Analytical Surveys*, 684 F.3d at 52

(cleaned up) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)).

2

As described in my initial ruling on Cabrera's motion for temporary release, although there are several different statutes that provide authority for a court to release a detainee, Cabrera has been convicted and his appeal is pending, and so the only standard relevant in this case is that under 18 U.S.C. § 3145(c).  *See* Order, Doc. No. 399, at 2.  That section reads, in relevant part:  "A person subject to detention pursuant to section . . . [3143](b)(2), and who meets the conditions of release set forth in section . . . [3143](b)(1), may be ordered released, under appropriate conditions . . . , if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate."  18 U.S.C. § 3145(c).

Cabrera is currently detained pursuant to 18 U.S.C. § 3143(b)(2),[2] which "establishes mandatory detention pending appeal for defendants convicted of certain crimes."  *See United States v. Wilder*, 2020 WL 2319136, at *4 (D. Md. May 11, 2020).  To release Cabrera pursuant to section 3145(c), I must find both "exceptional reasons" why Cabrera's detention would not be appropriate *and* that Cabrera "meets the conditions of release set forth in section . . . [3143](b)(1)."  *See* 18 U.S.C. § 3145(c); *Wilder*, 2020 WL 2319136, at *5; *United States v. Clayton*, 2020 WL 1940877, at *2 (N.D. Ohio Apr. 22, 2020); *United States v. Purvis*, 2020 WL 1888854, at *2–3 (D. Kan. Apr. 16, 2020).  For a detainee to meet the conditions of release set forth in section 3143(b)(1), a judge must find "(A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released" and "(B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in (i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."  *See*

---

[2]  I previously noted that neither party had confirmed that fact, *see* Order, Doc. No. 399, at 3, but the government now has, *see* Gov't Opp'n, Doc. No. 407, at 2.

18 U.S.C. § 3143(b)(1).  "[O]n all the criteria set out in subsection (b) [of section 3143], the burden of persuasion rests on the defendant."  *United States v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985); *see also United States v. Percoco*, 2019 WL 493962, at *4 (S.D.N.Y. Feb. 8, 2019).

When a court evaluates the nature of a detainee's appeal, it should undertake a two-step analysis.  First, a court should determine "whether any question raised on appeal is a 'substantial' one."  *Randell*, 761 F.2d at 125.  Although it has not defined the term precisely, the Second Circuit has indicated that a "substantial question" is a question "of more substance than would be necessary to a finding that it was not frivolous," meaning it "is a close question or one that very well could be decided the other way."  *Id.* (cleaned up) (quoting *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985)); *see also United States v. Ghavami*, 23 F. Supp. 3d 148, 158 (S.D.N.Y. 2014) (defining "substantial question" the same way).  If a question raised on appeal is substantial, a court should proceed to step two and consider "whether that question is so integral to the merits of the conviction on which defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial."  *Randell*, 761 F.2d at 125 (cleaned up) (quoting *United States v. Miller*, 753 F.2d 19, 23 (3d Cir. 1985)).

In sum, the conditions of release in section 3143(b)(1) require that

> before a district court may grant bail pending appeal, it must find:  (1) that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released; (2) that the appeal is not for purpose of delay; (3) that the appeal raises a substantial question of law or fact; and (4) that if the substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial on all counts on which imprisonment has been imposed.

*Id.*

## II.    Discussion

4

A. <u>My Initial Order</u>

In my initial order denying Cabrera's motion for temporary release, I agreed with Cabrera that "the COVID-19 pandemic's effect in prisons—particularly at Wyatt, where infection rates have increased dramatically in recent weeks—and Cabrera's poor health" amounted to an "exceptional reason" that made his detention under section 3143(b)(2) not appropriate. *See* Order, Doc. No. 399, at 5 (citing 18 U.S.C. § 3145(c)).

However, I also held: "I cannot find by clear and convincing evidence that Cabrera is not a risk to flee and that Cabrera does not pose a danger to the safety of his community." *Id.* at 6. Regarding his risk of flight, I noted that Cabrera was unlikely to flee to the Dominican Republic (his home country) because of his community ties in New York, the fact that he would be on electronic monitoring, and the present difficulty of international travel. *Id.* at 6 n.8. I remarked, though, that "the remaining decade on his sentence provides Cabrera with a strong incentive" to flee. *Id.* at 6. More importantly, with respect to Cabrera's criminal conduct, I wrote:

> As I noted in my judgment, Cabrera's "crimes are very serious due to the fact that Cabrera preyed on very vulnerable victims." Judgment, Doc. No. 380, at 1. Indeed, Cabrera's crimes spanned many years: he "repeatedly engaged in similar conduct for years, harming many victims." *Id.* And Cabrera was undeterred by even his co-defendants' arrests: even after Cabrera's co-defendants were arrested for their role in this case, Cabrera continued perpetrating this criminal scheme for months more. *See id.* Finally, I found that Cabrera had "shown a lack of remorse." *Id.*

*Id.* at 6–7.

Regarding Cabrera's appeal, I explained that I could not find that it raised a substantial question of law or fact in large part because neither Cabrera nor the government discussed the nature of Cabrera's appeal. *See id.* at 7. Because Cabrera had "not even mentioned the nature or merits of his appeal," he had failed to carry his burden of persuasion on that issue. *See id.* (citing *Randell*, 761 F.2d at 125).

5

B.  Parties' Arguments Regarding Reconsideration

Cabrera's motion for reconsideration seeks to "address deficiencies that the Court noted in" Cabrera's prior submissions, primarily by addressing the nature of Cabrera's appeal.  *See* Mot. for Reconsid., Doc. No. 400, at 1.  Regarding Cabrera's appeal, Cabrera's counsel indicates that, although appellate briefs have not yet been filed, he "has communicated with appellate counsel, and the issues to be raised on appeal include all of those that Mr. Cabrera raised in his Rule 29 motion . . . for judgment of acquittal and Rule 33 motion . . . for [a] new trial."  *Id.* at 1–2.  In his Rule 29 motion, Cabrera argued that the government had failed to establish the "taking" and "holding" elements of kidnapping[3] and the "fear" element of extortion.[4]  *See* Order, Doc. No. 305, at 5–6.  In his Rule 33 motion, Cabrera argued that I should have instructed the jury on state-law larceny.  Cabrera claims he was entitled to those instructions because those were the only crimes he had committed, and, to the extent that he "held" his victims, he did so merely incidentally to committing those crimes.  Specifically, Cabrera points to the following portion of my Order denying his Rule 33 challenge:

> It does not appear to be the law of this circuit that if the jury found that the defendants' holding of a victim was incidental to their committing larceny and/or fraud that the government has failed to prove the holding element of kidnapping. That may be true in the Eleventh Circuit (*see United States v. Howard*, 918 F.2d 1529, 1536–37 (11th Cir. 1990)), the Third Circuit (*see Government of Virgin Islands v. Berry*, 604 F.2d 221, 226–27 (3d Cir. 1970)), the Ninth Circuit (*see United States v. Etsitty*, 130 F.[3]d 420, 427 (9th Cir. 1997)), and under the

---

[3]  There are three elements of kidnapping under 18 U.S.C. § 1201(a):  (1) taking, (2) holding, and (3) interstate commerce.  *See United States v. Corbett*, 750 F.3d 245, 250 (2d Cir. 2014) ("The kidnapping statute sets forth three elements of the crime: the victim must be unlawfully taken, coerced or deceived into accompanying the accused nonconsensually; he or she must be held by the accused for ransom, reward or otherwise; and he or she must be transported in interstate or foreign commerce.") (cleaned up).

[4]  18 U.S.C. § 1951(a) "prohibits . . . extortion—including conspiracy and attempt—that affects interstate commerce."  *United States v. Kirsch*, 903 F.3d 213, 221 (2d Cir. 2018) (citing 18 U.S.C. § 1951(a)).  "Extortion" is defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."  18 U.S.C. § 1951(b)(2).  To establish the element of fear, the government must prove "that the defendant knowingly and willfully created or instilled fear, or used or exploited existing fear with the specific purpose of inducing another to part with property."  *United States v. Coppola*, 671 F.3d 220, 241 (2d Cir. 2012).  The fear requirement may be satisfied by fear of economic harm or loss.  *See United States v. Fazio*, 770 F.3d 160, 166 (2d Cir. 2014).

> Connecticut state kidnapping statute (*see State v. Salamon*, 287 Conn. 509 (2008)).
> But there is no guidance from the Second Circuit that holding incidental to another
> crime does not constitute holding for the purposes of proving kidnapping.

*Id.* at 46–47.  Cabrera thus argues that his "argument presents an issue of first impression in the Second Circuit" that "has support in other jurisdictions" and that, if he prevails, "he will be entitled to a new trial because these issues go to the essential . . . elements of the charged crimes."  Mot. for Reconsid., Doc. No. 400, at 2–3.

Cabrera also argues that he is neither a risk of flight nor a danger to the community.  First, Cabrera points out (correctly) that he does not have a decade remaining on his sentence, as I remarked in my initial Order, but, rather, about six-and-a-half years.  *See id.* at 3–4.[5]  The less time remaining on his sentence, Cabrera apparently argues, the lesser his incentive to flee.  *Id.*  Cabrera also emphasizes that his proposed conditions of release—including (1) home incarceration with a GPS monitor and (2) a $100,000 bond co-signed by his niece and two sisters[6]—make him unlikely to flee.  *Id.* at 4.  Regarding his dangerousness, Cabrera argues that he "is not an inherently or historically violent person," has no prior criminal convictions, and has a spotless record so far at Wyatt.  *Id.*

The government argues that I should not consider Cabrera's motion for reconsideration and that, even if I do, it should fail.  First, the government points out that Cabrera has not met the standard for reconsideration because he "has raised no [new] arguments or bases for his motion," but rather "responds to the Court's order denying his motion, attempting a second bite at the apple."  Gov't Opp'n, Doc. No. 407, at 2.  Second, the government addresses Cabrera's argument on the merits.  The government argues that "there is no question that the defendant is a

---

[5] Cabrera's release date is currently January 21, 2027.  *See* Find an Inmate, BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited July 13, 2020) (insert Cabrera's name).

[6] Although Cabrera mentioned only his niece in his motion for reconsideration, *see* doc. no. 400, at 4, Cabrera mentioned his two sisters at the Zoom hearing in this matter.

danger to the community" because of his conduct and the fact that he "has shown zero remorse," including, in the government's view, by lying to the probation office during his pre-sentence interview. *Id.* at 3. The government notes that "each of [Cabrera's] victims strongly objects to the defendant's release," in part because Cabrera knows where the victims live. *Id.* at 3–4. The government also argues that Cabrera is a risk of flight because "he faces years of incarceration followed by potential deportation" to the Dominican Republic, from where "it is unlikely that he will be returned to the United States." *Id.* at 4.

The government also disputes whether there is any significant issue on appeal. The government argues that—even assuming that there *is* a significant appellate issue with respect to Cabrera's two kidnapping counts of conviction—there is no significant issue regarding Cabrera's three extortion counts of conviction. *Id.* Indeed, the only issue Cabrera identifies with respect to the extortion counts is that a reasonable jury could not have found that the government established the "fear" element of extortion. *Id.* But the government points out that I have already rejected that contention. *Id.*; *see also* Order, Doc. No. 305, at 17–22; 25–30 (denying Cabrera's Rule 29 motion with respect to his three extortion counts of conviction).

C. Discussion

The government is correct that Cabrera's motion for reconsideration is atypical. Rather than noting an "intervening change of controlling law, the availability of new evidence, or . . . a clear error or . . . manifest injustice," *Virgin Atl. Airways*, 956 F.2d at 1255, the motion attempts primarily to address an argument (the nature of Cabrera's appeal) omitted from Cabrera's prior briefing. That argument was omitted because Cabrera's counsel "assumed, incorrectly as it turned out, that having demonstrated exceptional circumstances, there would be a hearing where he could demonstrate that release on bond was appropriate under 18 U.S.C. 3143(b)(2)." Mot.

for Reconsid., Doc. No. 400, at 1.  Even though the motion is atypical, I consider it on the merits and **deny** it.

1.   It Is Unclear Whether "Exceptional Reasons" Still Warrant Cabrera's Release.

In my initial order denying Cabrera's motion for temporary release, I agreed with Cabrera that "the COVID-19 pandemic's effect in prisons—particularly at Wyatt, where infection rates have increased dramatically in recent weeks—and Cabrera's poor health" amounted to an "exceptional reason" that made his detention under section 3143(b)(2) not appropriate.  *See* Order, Doc. No. 399, at 5 (citing 18 U.S.C. § 3145(c)).  I am no longer sure that COVID-19's effect at Wyatt, combined with Cabrera's health conditions, amount to an "exceptional reason" that makes his detention under section 3143(b)(2) not appropriate.  In particular, as I remarked at the Zoom hearing on the instant motion, the status of COVID-19 at Wyatt is under control and improving.  According to reports that I receive, it appears now that zero inmates at Wyatt are testing positive for the coronavirus.[7]  I need not decide definitively whether the current status of COVID-19 at Wyatt (combined with Cabrera's poor health) still constitutes an "exceptional reason" warranting Cabrera's release under section 3145(c) because, even if it did, Cabrera does not meet the conditions for release set forth in section 3143(b)(1).

2.   Cabrera Does Not Meet the Conditions for Release under Section 3143(b)(1).

a.  *Risk of Flight and Danger to the Community*

In my ruling on Cabrera's motion for temporary release, I described in some detail why I could not find by clear and convincing evidence that Cabrera does not pose a danger to the community and that he is not a risk of flight.  *See* Order, Doc. No. 399, at 5–7.  Most of

---

[7]  The latest update from Wyatt from the Acting U.S. Marshal indicates that there were no COVID-19 cases among detainees at Wyatt as of July 10, 2020.

Cabrera's motion for reconsideration is not addressed to that determination, and I adhere to it.  I only briefly supplement my reasoning.

Although a close call, I still cannot find by clear and convincing evidence that Cabrera does not pose a risk of flight.  Cabrera argues in his motion for reconsideration that he is not a risk of flight because (1) he has under seven years remaining on his sentence, (2) fleeing would bankrupt his proposed bond co-signers (his niece and his two sisters), and (3) he would be subject to strict home incarceration with GPS monitoring.  I agree with Cabrera that (2) and (3) counsel strongly in his favor.  However, six-and-a-half years is still a long time to serve, and it provides Cabrera with a strong incentive to flee.  In addition, Cabrera is possibly subject to deportation at the end of his sentence.  *See* Gov't Opp'n, Doc. No. 407, at 4; PSR, Doc. No. 326, at ¶ 85 ("ICE informed that the defendant's conviction could classify him as a level one violator under the Immigration and Customs Enforcement Secure Communities Program.  As such, he may be amenable to arrest for immigration violations.").  That possibility also amplifies his incentive to flee.  Taking all those factors into account—although I still "do not believe that Cabrera is *likely* to flee"—I cannot find by clear and convincing evidence that Cabrera is not a risk of flight.  *See* Order, Doc. No. 399, at 6.

As I explained in my initial Order, because of Cabrera's criminal conduct in this case, I also cannot find by clear and convincing evidence that Cabrera does not pose a danger to any person or the community.  Cabrera's motion for reconsideration spends only one paragraph reiterating Cabrera's earlier arguments that I have already rejected.  *See* Mot. for Reconsid., Doc. No. 400, at 4.

b.  *Nature of Appeal*

Even if Cabrera had established that exceptional reasons justify his release and that clear and convincing evidence indicates Cabrera does not pose a risk of flight or a danger to the community, Cabrera's motion for temporary release would still fail.  That is because his appeal does not present a substantial question of law or fact that, if decided favorably, is likely to result in a reversal or a new trial on all counts of conviction for which I imposed imprisonment.

In my prior order, I explained that I could not find that Cabrera's appeal raised a substantial question of law or fact because Cabrera made no mention of the nature of his appeal and his appellate brief had not yet been filed.  *See* Order, Doc. No. 399, at 7.  Thus, Cabrera had failed to carry his burden of persuasion on that condition, as required under section 3143(b).  *See Randell*, 761 F.2d at 125.  In his motion for reconsideration, as discussed above, Cabrera confirms that his appeal will raise all the issues he raised in his Rule 29 motion for acquittal and Rule 33 motion for a new trial.  *See* Mot. for Reconsid., Doc. No. 400, at 2.  Cabrera argues that I have acknowledged that his argument regarding whether holding incidental to another crime can constitute holding for the purposes of proving kidnapping presents an issue of first impression in the Second Circuit.  *Id.* at 2–3.  In Cabrera's view, he asserts a "novel" issue "not clearly controlled by precedent."  *Id.* at 3.  Cabrera believes that if he is successful on appeal, his "conviction will likely be reversed."  *See id.*  Thus, Cabrera argues that he has raised a "substantial question of law or fact likely to result in" reversal or an order for a new trial.  18 U.S.C. § 3143(b)(1)(B).

I do not agree with Cabrera for several reasons.  First, Cabrera omits an important part of the analysis:  He must show that a substantial question of law or fact exists that will lead to reversal or a new trial on *all* counts of conviction for which imprisonment was imposed.  Second, Cabrera's argument regarding the "incidental holding" question on his kidnapping convictions

11

does not present a substantial question of law or fact. I understand that my prior Order may have made that issue seem like a close question, but it is not.

To satisfy the conditions of release under section 3143(b)(1)(B), Cabrera must show that there are substantial questions of law or fact that are likely to result in reversal or an order for a new trial for *all* counts of conviction for which I imposed prison terms. *See Randell*, 761 F.2d at 125 (defendant must show that if the "substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial on all counts on which imprisonment has been imposed"); *id.* at 125–26 (holding that defendant's arguments "pose no challenge to petitioner's conviction on the five tax evasion counts," and so denying defendant's application because it did not raise "a substantial question of law or fact likely to result in reversal or an order for a new trial on all of the counts for which he received prison terms"); *Percoco*, 2019 WL 493962, at *4 ("[T]he defendant must show that the question, if resolved in his favor, would result in reversal on all of the counts for which he has been sentenced to a term of imprisonment.") (cleaned up) (quoting *Randell*, 761 F. 2d at 126); *United States v. Delanoy*, 867 F. Supp. 114, 116 (N.D.N.Y. 1994) ("The reversal must be likely on all counts for which imprisonment has been imposed."); *United States v. Archer*, 813 F. Supp. 2d 339, 343 (E.D.N.Y. 2010) (defendant must show that favorable appellate decision "is likely to result in reversal or an order for a new trial on all counts on which imprisonment has been imposed").

Cabrera has not made any argument about his extortion convictions beyond those already raised and rejected in his Rule 29 motion. In particular, Cabrera argues that he was entitled to a judgment of acquittal because the government had failed to establish the "fear" element of extortion. *See* Order, Doc. No. 305, at 2. However, in denying Cabrera's Rule 29 motion on that

ground, I explained in detail why a reasonable jury could have found that Cabrera instilled fear

in the victims of his extortion.  *See id.* at 17–22, 25–30.  I did not note that any of Cabrera's

arguments presented close questions, and, in my view, they do not.  I imposed a sentence of 135

months' imprisonment on each count of conviction—including Cabrera's three extortion

convictions—all to run concurrently.  *See* Judgment, Doc. No. 380.  Because Cabrera does not,

in my view, raise a close or "substantial" question or law or fact with respect to his extortion

convictions, it is not likely that Cabrera will receive a favorable appellate decision on *all* counts

of conviction for which I imposed imprisonment.

Although Cabrera argues otherwise, he also has not presented a substantial question of

law or fact with respect to his kidnapping convictions.  To make his point, recall that Cabrera

relies on a paragraph from my order denying his Rule 33 motion.  *See* Mot. for Reconsid., Doc.

No. 400, at 2–3; Order, Doc. No. 305, at 46–47.  Cabrera had requested that I instruct the jury on

the state-law crimes of larceny in the fourth and fifth degrees because it was his position "that

any type of restraint or detention imposed by the defendants . . . that may have occurred in this

case, was, on each occasion alleged in the indictment, merely 'incidental' to the effectuation of

an over-arching scheme on defendants' part to commit one of those two state larceny, or fraud-

type offenses."  Cabrera's Proposed Jury Instructions, Doc. No. 200, at 7.  I declined to so

instruct the jury.  I explained that (1) Cabrera's general argument—that he did not "hold" the

victims within the meaning of the federal kidnapping statute—was already included in my

charge, and (2) it was not "the law of this circuit that if the jury found that the defendants'

holding of a victim was incidental to their committing larceny and/or fraud that the government

has failed to prove the holding element of kidnapping."  Order, Doc. No. 305, at 46.  I noted that

even though "[t]hat may be true" in the Third, Ninth, and Eleventh Circuits, and in the State of Connecticut, it was not true in the Second Circuit. *Id.* at 46–47.

It is understandable that Cabrera and his counsel latch onto that statement because it appears to acknowledge that authority exists in other jurisdictions that would support Cabrera's position. However, the authority that I cited does not provide support for Cabrera; those cases are inapposite because they regard distinguishable fact patterns and underlying crimes far different from fourth- or fifth-degree larceny. More specifically, the cases I cited from the Third, Ninth,[8] and Eleventh Circuits and the Connecticut Supreme Court are all distinguishable because of (1) the lengths of the "holds" involved and (2) the nature of the underlying crimes.

In *Gov't of the Virgin Islands v. Berry*, the Third Circuit affirmed a defendant's robbery conviction but reversed his kidnapping conviction. 604 F.2d 221, 226–27 (3d Cir. 1970).[9] The defendants had robbed an individual by bringing him to a beach, forcing him to go swimming in the ocean at gunpoint, and taking his belongings while he was in the water. The Third Circuit explained that, although the defendants may have committed kidnapping by the letter of the law, the case was really a robbery. In the Third Circuit's view, it was inappropriate that every crime inherently involving a "hold" should amount to a kidnapping. Thus, the Third Circuit identified four factors to distinguish "true" kidnapping from underlying crimes that inherently involved a detention or asportation: (1) the duration of the detention or asportation; (2) whether the detention or asportation occurred during the commission of a separate offense; (3) whether the

---

[8] I do not discuss *United States v. Etsitty* at length because it is inapposite for two important reasons. 130 F.3d 420 (9th Cir. 1997). First, in *Etsitty* the Ninth Circuit *affirmed* the defendant's kidnapping conviction. *See id.* at 427–28. Second, the issue in *Etsitty* did not regard incidental holding but, rather, merger and double jeopardy under the Fifth Amendment. *See id.* at 426–27.

[9] The Third Circuit was construing the Virgin Islands Code's kidnapping statute, not the federal kidnapping statute, but they are similar in the respects important to this issue. *Compare* 14 V.I.C. § 1052(a) *with* 18 U.S.C. § 1201(a). *See also United States v. Howard*, 918 F.2d 1529, 1535 (11th Cir. 1990) (noting that the Virgin Islands statute "largely mirrored the language of" the federal statute).

14

detention or asportation which occurred is inherent in the separate offense; and (4) whether the asportation or detention created a significant danger to the victim independent of that posed by the separate offense. *Id.* at 227. The Third Circuit held that no kidnapping had occurred in *Berry* because it did "not believe that [the victim's] confinement while on the beach was any different than that which is incident to the crimes of robbery and assault": "Necessarily implicit in both [robbery and assault] is some limited confinement or asportation." *Id.* at 228.

In *United States v. Howard*, the Eleventh Circuit affirmed defendants' convictions for assault with a deadly weapon and other drug and gun offenses but reversed their convictions for kidnapping. 918 F.2d 1529, 1538 (11th Cir. 1990). The defendants, a group of drug dealers, attempted to rob a buyer (who was actually an undercover DEA agent). Before the deal, the buyer asked to see the drugs, which were in the defendants' car. When the buyer leaned into the car to see the drugs, one of the defendants "placed a gun in [the buyer]'s ribs, told him to get in the [car], and attempted to force him in when [the buyer] resisted." *Id.* at 1532. The buyer "grabbed [the defendant's] gun by the barrel and pushed it down, then backed away, pulled his own gun, and yelled 'Police!'" *Id.* The Eleventh Circuit applied the four-part *Berry* test in holding that the defendants' "hold" of the buyer inside the defendants' car was merely incidental to the underlying assault with a deadly weapon. The detention was just a "few seconds" long; the detention would have occurred during the "attempted robbery"; that detention was "inherent in the separate offense" because "the crime of robbery almost invariably involves a brief detention of the victim"; and the detention did not pose a significant danger to the victim independent of the attempted robbery. *Id.* at 1536–37.

In *State v. Salamon*, the Connecticut Supreme Court affirmed a defendant's conviction for unlawful restraint in the first degree and risk of injury to a child but reversed the defendant's

conviction for kidnapping in the second degree.  287 Conn. 509, 514 (2008).  The defendant had

followed a 15-year old female victim into the stairwell of an unfamiliar train station, grabbed her

by the back of the neck, and held her down on the stairs by her hair.  The victim was eventually

able to free herself, and the defendant fled.  The encounter lasted "at least five minutes."  *See id.*

at 514–15.  In overturning precedent, the Connecticut Supreme Court remarked that its "prior

holdings constru[e] the kidnapping statutes to encompass virtually all sexual assaults and

robberies."  *Id.* at 524.  In *Salamon*, though, the Court held that "to commit a kidnapping in

conjunction with another crime, a defendant must intend to prevent the victim's liberation for a

longer period of time or to a greater degree than that which is necessary to commit the other

crime."  *Id.* at 542.

      As the above descriptions illustrate, it was not correct for me to say that it "may be true"

in other jurisdictions "that if the jury found that the defendants' holding of a victim was

incidental to their committing *larceny and/or fraud* that the government had failed to prove the

holding element of kidnapping."  Order, Doc. No. 305, at 46–47 (emphasis added).  None of the

above cases concerns anything like a fourth- or fifth-degree larceny.  Indeed, in marked contrast

to the underlying crimes charged in the above cases, no detention or asportation is inherent in the

crime of larceny in Connecticut.  "A person commits larceny when, with intent to deprive

another of property or to appropriate the same to himself or a third person, he wrongfully takes,

obtains or withholds such property from an owner."  Conn. Gen. Stat. § 53a-119.  (Larceny in the

fourth degree is larceny where the value stolen exceeds $1,000, *see* Conn. Gen. Stat. § 53a-125,

and larceny in the fifth degree is larceny where the value stolen exceeds $500, *see* Conn. Gen.

Stat. § 53a-125a.)  By its plain terms, then, larceny does not necessarily involve any degree of

detention or asportation.  Indeed, the larceny statute lists the following examples of larceny,

16

among others:  (1) embezzlement,[10] (2) acquiring property lost, mislaid or delivered by

mistake,[11] and (3) receiving stolen property.[12]  Quite clearly, none of those crimes inherently

involves detention or asportation of any sort.  *See also, e.g.*, *State v. Hayward*, 169 Conn. App.

764, 765 (2016) (affirming conviction for larceny in the first degree based on defendant's

fraudulently obtaining a series of loans; never any suggestion of detention or asportation).

Furthermore, it would be quite difficult (if not impossible) to classify detentions as long

as those that occurred in this case as "incidental" to any crime other than kidnapping—and

certainly not to larceny.  Cabrera was convicted on two counts of kidnapping.  The underlying

conduct involved Cabrera's driving around the victims in his car for about *eight hours*.  *See*

Order, Doc. No. 305, at 17–21.  The jury heard evidence that one of the victims "told Cabrera to

let her out of the car at least once and he refused."  *Id.* at 21.  I held that "[t]he evidence supports

the conclusion that [a victim] and her son had no choice but to remain with Cabrera because he

refused to let her out of the car and because she did not know where she was and did not have

her immigration paperwork or bus tickets."  *Id.*  Put simply, Cabrera's conduct does not resemble

the conduct of the defendants in the above cases, who committed robberies or assaults and

incidentally held their victims for a few seconds or minutes.  Thus, the existence of that authority

provides Cabrera no support.

## III.    Conclusion

For the foregoing reasons, Cabrera's motion for reconsideration, doc. no. 400, is **denied**.

---

[10]   *See* Conn. Gen. Stat. § 53a-119(1) (defining embezzlement as occurring when one "wrongfully appropriates to himself or to another property of another in his care or custody").

[11]   *See* Conn. Gen. Stat. § 53a-119(4) (defining the crime as occurring when one "comes into control of property of another that he knows to have been lost, mislaid, or delivered under a mistake as to the nature or amount of the property or the identity of the recipient . . . if, with purpose to deprive the owner thereof, he fails to take reasonable measures to restore the property to a person entitled to it").

[12]   *See* Conn. Gen. Stat. § 53a-119(8) (defining the crime as occurring when one "receives, retains, or disposes of stolen property knowing that it has probably been stolen or believing that it has probably been stolen, unless the property is received, retained or disposed of with purpose to restore it to the owner").

IT IS SO ORDERED.

Dated at Bridgeport, Connecticut, this 13th day of July 2020.


/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge